UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL KOSTERLITZ,

    Plaintiff,

v.                                Case No. 8:18-cv-569-T-33JSS

THE S/V KNOTTA KLU and
ROBERT E. LIBBEY, JR.,

    Defendants.
_____/

**ORDER**

This matter comes before the Court upon consideration of Plaintiff Michael Kosterlitz's Motion to Strike Defendant's Affirmative Defenses and Counterclaim as Fraud on the Court, Dismiss Counterclaim and Defenses with Prejudice and Enter Default (Doc. # 24), filed on May 3, 2018. Defendant Robert E. Libbey, Jr. responded on May 17, 2018. (Doc. # 28). For the reasons that follow, the Motion is denied.

**I.  Background**

One question dominates all the claims and counterclaims in this case: who owns the 40-foot catamaran, the Knotta Klu? Kosterlitz initiated this action on March 9, 2018, alleging he is the vessel's true owner and asserting a petitory and possessory claim in admiralty as well as claims for malicious prosecution, civil theft, conversion, and false arrest. (Doc.

1

# 1). The gist of Kosterlitz's claims is that he and Libbey, who used to be friends, had tried to negotiate the sale of the Knotta Klu from Kosterlitz to Libbey. (Id. at 3). Although their negotiations began in June of 2015, Kosterlitz and Libbey still had not settled on a sales price over two years later. (Id. at 4-5). Nevertheless, Libbey kept the Knotta Klu docked on his property and made payments to Kosterlitz. (Id. at 3-4). According to Kosterlitz, Libbey maintained that they had executed a bill of sale for the Knotta Klu in October of 2017, while Kosterlitz asserted no such sale had taken place and sought return of the Knotta Klu. (Id. at 5).

Kosterlitz eventually decided to take possession of the Knotta Klu by going to Libbey's property and removing the vessel on December 26, 2017. (Id.). Libbey then filed a report with the Lee County Sheriff alleging that Kosterlitz had stolen the Knotta Klu. (Id. at 5-6). Kosterlitz was arrested for grand larceny. (Id. at 6). The Lee County State Attorney ultimately determined that no charges should be brought. (Id.).

Libbey sings a different tune. In his Answer and Counterclaim, Libbey contends he is the true owner of the Knotta Klu because he and Kosterlitz completed the sale of the vessel. (Doc. # 15 at 7-8). Libbey alleges the sale

2

occurred in August of 2015, with Libbey "assum[ing] the monthly payment of an unsecured Note owed to its holder, Ned Christensen; convey[ing] possession and title to a F-27 trimaran to Kosterlitz; and assum[ing] the balloon payment of the 'Christensen' Note when it became due." (Id. at 7). Libbey attaches a bill of sale to his Answer. (Id. at 13). Also in August of 2015, Libbey "entered into an agreement with 'Christensen' to assume the monthly debt and the balloon payment due on the unsecured note to complete the purchase of the subject vessel free and clear of any claim." (Id. at 8). Libbey attaches an unsigned "Promissory Note," dated December 1, 2017, which purports to "replace[] [the] prior Promissory Note between" Kosterlitz and Christensen. (Id. at 14).

In addition to assuming the Note and giving Kosterlitz the trimaran, Libbey also made "an initial payment" of $5,000 to Kosterlitz's account. (Id. at 8). Libbey summarizes all that he paid to purchase the Knotta Klu in his second affirmative defense to Kosterlitz's Complaint: "the sum of $40,974.60 in cash together with the in-kind value of a F-27 trimaran vessel with an agreed minimum value of $30,000, together with [Libbey's] assumption of the Promissory Note." (Id. at 5). Yet, Kosterlitz "surreptitiously entered onto the Libbey property and attempted to remove the subject vessel to

3

an unknown location." (Id.). Based on these allegations, Libbey asserts a petitory and possessory counterclaim as well as counterclaims for conversion and unjust enrichment against Kosterlitz.

Kosterlitz filed the instant Motion, which this Court construes as a motion for sanctions, on May 3, 2018. (Doc. # 24). Kosterlitz argues that Libbey has committed a fraud upon the Court because Libbey alleged a different sales price for the Knotta Klu in a state court complaint filed on March 9, 2018 — the same day Kosterlitz filed this case. (Id. at 4-5; Doc. # 24-2). He asserts that Libbey's unexecuted promissory note, by which Libbey supposedly assumed Kosterlitz's debt to Christensen and which Libbey attached to his Counterclaim, (Doc. # 15 at 14), is manufactured evidence. Kosterlitz also notes that Christensen, who is represented by the same counsel as Libbey, has filed a state court action against Kosterlitz. In that action, Christensen alleges that Kosterlitz — not Libbey — owes him money under the promissory note. (Doc. # 24-3). Because of these inconsistencies, Kosterlitz contends Libbey should be sanctioned for perpetrating a fraud on the Court by having his Answer and Affirmative Defenses stricken, having default entered against him, and having the Counterclaim dismissed with prejudice. (Doc. # 24 at 7).

4

Libbey has now responded, (Doc. # 28), and the Motion is ripe for review.

## II. Discussion

The Court construes Kosterlitz's Motion as a motion for sanctions because Kosterlitz alleges that Libbey's pleadings and Counterclaim should be respectively stricken and dismissed because of a supposed fraud on the Court.

"Federal courts derive their power to sanction any attorney, law firm, or party from three primary sources: Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the inherent power of the court." Stonecreek - AAA, LLC v. Wells Fargo Bank N.A., No. 1:12-CV-23850, 2014 WL 12514900, at *1 (S.D. Fla. May 13, 2014)(citing Chambers v. NASCO, Inc., 501 U.S. 32, 41 (1991)). "Invocation of the Court's inherent power requires a finding of bad faith." Island Stone Int'l Ltd. v. Island Stone India Private Ltd., No. 6:16-cv-656-Orl-40KRS, 2017 WL 1437464, at *11 (M.D. Fla. Apr. 4, 2017), report and recommendation adopted, No. 6:16-cv-656-Orl-40KRS, 2017 WL 1426664 (M.D. Fla. Apr. 21, 2017). "In determining whether sanctions are appropriate under the bad faith standard, the court focuses on the conduct and motive of a party, rather than on the validity of the case." Id.

5

"'[A]cts which degrade the judicial system,' including 'attempts to deprive the Court of jurisdiction, fraud, misleading and lying to the Court,' . . . are sanctioned through the court's inherent power." Stonecreek — AAA, 2014 WL 12514900, at *1 (quoting Chambers, 501 U.S. at 32, 42). "A court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud." Chambers, 501 U.S. at 44 (citing Universal Oil Products Co. v. Root Refining Co., 328 U.S. 575, 580 (1946)). "A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989); see also Gupta v. Walt Disney World Co., 482 F. App'x 458, 459 (11th Cir. 2012)("[C]lear and convincing evidence of egregious conduct [is] required to establish fraud on the court.").

"The Court's inherent power permits a broad spectrum of sanctions that include striking frivolous pleadings and defenses, imposing attorney's fees and costs, and outright

6

dismissal of a lawsuit." Stonecreek – AAA, 2014 WL 12514900, at *2 (citing Allapattah Servs., Inc. v. Exxon Corp., 372 F. Supp. 2d 1344, 1372-73 (S.D. Fla. 2005)). "Because of their very potency, inherent powers must be exercised with restraint and discretion." Chambers, 501 U.S. at 44. "[S]anctions for fraud are reserved for the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated." Island Stone Int'l Ltd., 2017 WL 1437464, at *11.

Kosterlitz has not shown a fraud on the Court by clear and convincing evidence. First, the Court will address the gravest of Kosterlitz's accusations: that Libbey manufactured the unsigned "Promissory Note" to support his claim that assumption of Kosterlitz's debt to Christensen was part of the purchase price for the Knotta Klu. (Doc. # 24 at 5). According to Kosterlitz, the claim that Libbey assumed Kosterlitz's debt "is obviously false, and Libbey knows it is false, because Libbey's attorney, after Libbey made this claim in federal court, sued Kosterlitz on behalf of Christensen claiming that Kosterlitz owes Christensen the note without reference to any purported subsequent

7

'replacement' agreement between Libbey and Christensen." (Id.).

But Kosterlitz presents no direct evidence that Libbey manufactured the unsigned "Promissory Note." Libbey only would have "manufactured" the "Promissory Note" if he drafted it and back-dated it to December 1, 2017, in order to file it as evidence in this case. Kosterlitz has no evidence that occurred. True, the fact that Libbey's counsel represents Christensen in a state court action in which Christensen alleges Kosterlitz owes the debt is disconcerting. Nevertheless, at most that proves that Christensen and Libbey no longer agree on the validity of Libbey's assumption of Kosterlitz's debt, with the same counsel willing to argue each viewpoint in different actions. While this calls into question the behavior of Libbey's counsel, it does not suggest that Libbey does not believe his assumption of the debt is valid, let alone that Libbey fabricated the "Promissory Note" in order to fool the Court.

A case cited heavily by Kosterlitz illustrates why Kosterlitz's manufactured evidence argument fails. In Stonecreek — AAA, the defendant argued that the case should be dismissed because plaintiffs had manufactured evidence — forged documents — in order to support their claims.

Stonecreek — AAA, 2014 WL 12514900, at *1. The Stonecreek — AAA court agreed and dismissed the case as a sanction because defendant presented clear and convincing evidence that the signatures on the relevant documents were forged. Id. at *2-3. Defendant presented the testimony of two individuals who supposedly signed the documents, both averring under penalty of perjury that their signatures were forged. Id. Defendant also presented the testimony of a handwriting expert, who opined that both signatures were forgeries. Id. at *3. Kosterlitz has not presented any proof like that in Stonecreek — AAA. Therefore, Kosterlitz has not met his burden of presenting clear and convincing evidence that Libbey manufactured the unsigned "Promissory Note."

Kosterlitz goes on to argue the legal merits of the unsigned "Promissory Note," contending that it is "facially invalid as a matter of law" and violates Florida's Statute of Frauds. (Doc. # 24 at 5). This argument concerns the validity of Libbey's defense that he assumed Kosterlitz's debt to Christensen. But, in determining whether a fraud on the Court has occurred, the Court does not focus on the validity of a claim. It focuses on the conduct and motive of the party accused of committing the fraud. See Island Stone Int'l Ltd., 2017 WL 1437464, at *11 ("In determining whether sanctions

9

are appropriate under the bad faith standard, the court focuses on the conduct and motive of a party, rather than on the validity of the case."). The question of whether the "Promissory Note" provided by Libbey is legally valid is not before this Court on this Motion. Therefore, the Court will not address it.

Next, Kosterlitz makes much of the differences in Libbey's pleadings in the state court action, which has since been removed to this Court, and in this action. He argues that Libbey's complaint in the related case proves Libbey lied in his Answer and Counterclaim in this case. (Doc. # 24 at 6-7). According to Kosterlitz, "there is no reconciling the Libbey State Court Complaint and the federal Affirmative Defenses and Counterclaim." (Id. at 7).

True, Libbey's pleadings are not paragons of clarity. There are conflicts between his Answer, Affirmative Defenses, and Counterclaim in this case and his complaint in the related action originally filed in state court. But these conflicts can be reconciled without resorting to accusations of fraud on the Court. Rather, poor draftsmanship and a muddled theory of the case appear to be the culprits. While the $17,500 figure in Libbey's complaint in the related case is not mentioned in his Affirmative Defenses or Counterclaim in this

10

case, there is evidence on the record here related to that figure. Attached to Libbey's response to the motion for judgment on the pleadings is a "Sells Agreement" dated August 14, 2015, signed by both Kosterlitz and Libbey. (Doc. # 27-1 at 7). In it, the sales price of the Knotta Klu, related equipment, and outboard motor is set at $17,500. (Id.). But a later email from Kosterlitz to Libbey, dated April 18, 2016, lists the sales price of the Knotta Klu as involving: "the pay off" amount for the Christensen note, Libbey's trimaran, and the remaining balance of $8,000 ($16,000 minus the interest on money Libbey had lent to Kosterlitz) in cash. (Doc. # 27-1 at 8).

Thus, there were multiple elements to Libbey's purchase of the Knotta Klu — none of which are particularly clear at this stage — and Libbey focused on different elements in different pleadings. In his complaint originally filed in state court, Libbey mentions only the $17,500 cash element of the purchase price. And, in his Counterclaim in this case, he focuses primarily on the assumption of the Christensen promissory note and trade of the trimaran vessel. But even in his Counterclaim, where Libbey does not mention a $17,500 cash payment as part of the purchase price, Libbey makes it clear that additional cash payments were made to Kosterlitz.

11

Libbey pleads that he made a $5,000 "initial payment" to Kosterlitz in addition to assuming the promissory note and giving Kosterlitz the trimaran. (Doc. # 15 at 8). Libbey goes on to allege that he "has in fact made payments to or on behalf of Kosterlitz in the amount of $40,974.00." (Id.).

It seems to the Court that Libbey merely failed to mention the other non-cash elements of the alleged purchase price in his complaint in the related case. And, in his Answer and Counterclaim in this action, Libbey failed to specify a specific $17,500 cash payment, though he alludes to an even larger amount of cash paid to Kosterlitz or to others on behalf of Kosterlitz. Poor draftsmanship? Yes. Fraud on the Court? No. On the record here, the Court is not convinced that Libbey and his counsel intentionally lied in their pleadings about the purchase price for the Knotta Klu. Because Kosterlitz has not met his burden of establishing a fraud on the Court by clear and convincing evidence, Kosterlitz's Motion is denied.

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**:

Plaintiff Michael Kosterlitz's Motion to Strike Defendant's Affirmative Defenses and Counterclaim as Fraud on the Court, Dismiss Counterclaim and Defenses with Prejudice

12

and Enter Default (Doc. # 24), which the Court construes as a motion for sanctions, is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 21st day of June, 2018.

/s/ Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

13